# 9196

## LYON *ET AL*. v. PATTERSON *ET AL*.

### (87 S. E. 306.)

CONSTITUTIONAL LAW—STATUTES—CLAIMS.—A subsequent statute requiring a county to pay a claim growing out of benefits received by it, under a contract unauthorized by law when made, is unconstitutional, violating Const., act III, sec. 30.

(BY MESSRS. JUSTICES HYDRICK, FRASER, *and* CIRCUIT JUDGES MEMMINGER, WILSON DEVORE, SHIPP, GARY, BOWMAN, MOORE.)

Before RICE, J., Columbia, June, 1915.   Reversed.

Action in nature of mandamus by J. Fraser Lyon, as attorney for S. H. Owens *et al.*, against Andrew Patterson, as County Supervisor, *et al.*   From an order directing the issuance of the writ, the respondents appeal.   The facts are stated in the Circuit order as follows:

"This is a mandamus proceeding heard by consent at chambers during the present Sessions Court.   It was instituted to compel the county supervisor, the clerk of the board of county commissioners of Richland county to draw a warrant upon the county treasurer to pay to J. Fraser Lyon, as attorney for S. H. Owens, $1,533.33, as provided by the county appropriation act of 1915, as it relates to Richland county.   The proceeding was originally instituted in the Supreme Court, and upon the day for the argument in that Court an order was passed referring the whole matter to this Court.   In view of the above stated facts, this proceeding will be considered as if originally instituted in this Court. This hearing was had upon a demurrer of petitioners to the return of respondents.   There are no issues of fact involved.

"The facts as shown by the pleadings, the records of this Court and of the Supreme Court and statements of counsel which are undisputed, show that S. H. Owens was county supervisor for Richland county for the years 1898–1904; that C. M. Douglas was clerk of the board of county com-

missioners for the same period; that during the years 1898 and 1899 no salary was fixed by statute for the clerk; that in 1900 the salary of the clerk was fixed by statute at $500 per year, at least it was limited to that amount; that while the statute above mentioned was of force the county board of commissioners voted and allowed Clerk Douglas an additional amount for additional services, the additional rate being $400 per year; this compensation was fixed before the services were performed and was paid in monthly installments, covering a period of approximately four years of Mr. Owens' tenure of office. There was no question of fraud in this transaction. It is admitted that the county received and was the beneficiary of the service for which Clerk Douglas was so paid. But section 999, Civil Code 1912 (section 813, Civil Code 1902), forbids the county commissioners from voting this extra allowance, no matter what the reasonableness thereof or the exigencies of the occasion may be. Mr. Owens, as supervisor and *ex officio* member of the board of commissioners, was selected as the one of five members of that board to be sued for the recovery of the compensation allowed the clerk of the board for his extra services. The result of the suit was a judgment against Mr. Owens and his surety, which included the amount involved in this proceeding, and which amount has been paid into the public treasury. *Richland County* v. *S. H. Owens et al.,* 92 S. C. 329, 75 S. E. 549. In 1914 the legislature included in the county supply act a provision which allowed Mr. Owens to make claim for the return of his money, as well as other items not involved in this proceeding, and directed the board of claims to examine into the claims and to recommend payment by the county of Richland, in whole or in part, or the rejection of such claim or claims as may be presented as in the judgment of said board justice may require. It was further provided that the "board shall disregard all technical defects that may appear in connection with any and all claims that may be presented

by the said S. H. Owens and report its opinion as to the substantial justice and merit thereof." Under this statute the board of claims acted. The report was filed during the last session of the legislature, and while not filed within the time provided in the act, was nevertheless received and considered by the legislature. The county attorney appeared and was heard both before the board of claims and the legislative committee which considered its report. The board of claims rendered its opinion, which will be hereinafter incorporated in this order. The above facts are set forth in the petition and are admitted by the answer as well as orally by counsel for respondents. After the hearing by the board of claims, further hearings were had by the legislature, the county attorney representing the county commissioners, which resulted in the item in the county appropriation act of 1915 for the payment of $1,533.33 as recommended.

"Demand was made upon the county supervisor, the county board of commissioners and the clerk of the board of commissioners for payment of the item involved in this proceeding. The supervisor, Andrew Patterson, Jr., indicated his willingness to draw the necessary warrant, but the clerk of the board and the board of commissioners refused, whereupon this proceeding was commenced.

"In their return the respondents contend that the acts of the legislature of 1914 and 1915, whereby the claims of petitioners were first referred to the State board of claims and subsequently ordered to be paid by Richland county, were either assumptions of judicial power or were steps leading to, and finally consummating, a donation of public funds for the benefit of a private person, and in either event are unconstitutional. The Constitution is the fundamental law of the State, which neither the legislature nor any Court of this State has a right to disregard, and if the contention of the respondents is correct, then the writ must not issue against them.

"The acts of the General Assembly are presumed to be constitutional, and no Court will decree to the contrary unless it clearly appears. He who asserts that an act of the legislature violates the Constitution of the State or the United States, assumes the burden of making such assertion good beyond a reasonable doubt. When this has been done, however, the Court will not hesitate to so declare.

"The respondents contend, first, that the act of 1914 was an unauthorized assumption of the exercise of judicial functions by the legislature and quotes *Seegars* v. *Parrott*, 54 S. C. 26, 31 S. E. 677, 865, to sustain their position. There is no doubt that the three departments of the government, to wit, the legislative, the executive and the judicial, are each within the sphere prescribed for it by the Constitution, supreme and independent of the other, and that no one of such departments may assume to itself any of the powers or duties imposed by the Constitution upon either of the others. So that if the act in question is the attempted exercise of a power delegated to the judicial department of the State, then it is null and void. There can be little, if any, doubt of the proposition that where the legislature desires information upon which it may act, or refuse to act, it may choose its own method of acquiring same. The act in question, in so far as the matter before us now is concerned, was intended as nothing but a means of procuring information relative to the claim in question. The report of the board of claims under said act bound no one. The legislature could act or refuse to act upon such report. It could in no sense be considered an attempt to judicially determine the rights of either the State or the claimant. The act 'necessarily involves the hearing of evidence and the determination of questions of fact,' but did not involve the determination of any question of law; on the contrary, it specifically directed that no question of law should be considered. And, again, no power even for a final determination of questions of fact was conferred, as such findings

were not, and were not intended to be, binding upon the legislature nor upon the claimant. My conclusion, therefore, upon the first point made is that it is unsound and must be overruled.

"The respondents next contend that the said act of 1914 is unconstitutional, because no mention of its provision, in so far as the matter under consideration is concerned, is made in the title thereof. Section 17 of article III of the Constitution of 1895 provides: 'Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title.' Can it be said that the act in question has the 'force of law' when applied to the matter now before us, in the sense used by the Constitution? No one is bound by its terms, except possibly the board of claims, and said board raised no objection to it. If, as we have already concluded, the sole purpose of the act was to provide information for the use of the legislature, and if the board of claims by said act was directed to procure same, then the legislature and the said board alone were concerned as to whether or not such act has the force of law. The legislature chose this method of procedure and accepted the information. The board did the work without objection, and I fail to see where any one can now raise any valid objection, constitutional or otherwise. The respondents raised the point that the board failed to comply with the requirements of the act of 1914, in that it failed to make its report in the time required. The report by the board not having been made within the time required by the act, the legislative body had the right to receive or reject it. They chose to receive it. That portion of the act referred to was merely directory and not mandatory, and it appears that at least a part of the delay by the board referred to was at the request of the respondents. As to the second objection raised, I conclude it must be overruled.

34—102

"The third objection raises the point of the constitutionality of the act of 1915 upon several grounds which are hereinafter considered. They allege the violation of article I, section 5 of the Constitution, commonly known as 'the due process and equal protection clause.' They assert that if the act had been directed against an individual, that it would be repugnant to the above article. There can be no doubt at all that this is correct. *Carolina Glass Company* v. *The State,* 87 S. C. 290, 69 S. E. 391.

"They assert, also, that in its private capacity Richland county is entitled to the same protection as an individual. While not prepared to admit this in its fullest sense, I am inclined to think that, in the main, this is a correct statement of the law. Cooley's Constitutional Limitation (7th ed.), page 348, is as follows, speaking of the rights of towns and counties to property: 'Usually their functions are wholly of a public nature and there is no room to imply any contract between them and the State in their organization as corporate bodies, except that which springs from the ordinary rules of good faith, and which requires that the property they shall acquire by legal decision, or otherwise, for the purpose of their organization, shall not be seized by the State and appropriated in other ways.' The suit against Owens was not brought by the county of Richland in its private capacity, nor to enforce a private right of said county, but was instituted, and authorzied to be so instituted, by said county as a subdivision of the governmental machinery of this State, and upon bonds payable to this State. 'With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the States and are, in fact, but a branch of the general administration of that policy. * * * All the powers with which the county is entrusted are powers of the State, and the duties with which they are charged are the duties of the State. McQuillin on Municipal Corporations, section 112. I think

that it will be found upon an examination of the decisions of this State, that this statement of the law is practically, if not precisely, the view expressed by our Supreme Court whenever they had occasion to consider the point. The judgment, therefore, upon said bonds, while it may be a contract, is not in favor of the county in its private capacity, and the State has control over, and may deal with it, as its best interest or honor demands. Hence the act of 1915 is not in violation of article I, section 8 of the Constitution, as is contended by respondents.

"It is also contended by respondents that the act of 1915 vacates and sets aside a judgment of the Court. If this be true, then there is no doubt that the legislature has exceeded its constitutional authority, and that the act is void. Cooley on Constitutional Limitations (7th ed.), page 137. This proposition is too plain and too well settled to require any extended list of citations to support it. We inquire then as to whether the legislature has attempted by this act to do this. The whole history of the case of *Richland County* v. *Owens,* 92 S. C. 329, 75 S. E. 549, from the beginning to its final determination in the Supreme Court, discloses that the claim was made, and sustained by the law Courts, that Owens had permitted to be paid out to Clerk Douglas $1,533.33 in violation of section 999 of the Civil Code of 1912, such amount being in addition to the salary allowed by section 763 of vol. I of the Code of Laws of 1902, and as he could show no statute authorizing this excess payment, he became liable therefor under his bonds executed to the State. Upon the trial Owens could not deny that the moneys had been paid out as stated. The statute was plain, and the judgment against him and his sureties followed as a matter of law. The said statute enacted by the legislature stared the trial Court in the face, and rendered it powerless to afford Owens any relief, no matter how great may have been the benefits conferred upon the State through the county by the services rendered by Douglas, not embraced

in or contemplated by the statutes defining his duties. It has never been contended by respondents that there was any trace of fraud in the said transaction. It has never been contended that Owens received the least part of the moneys paid out to Douglas. Smarting under the injustice which he felt had been done him by the application of the iron-bound rules of the law enacted by the legislature, and which the Courts were bound to enforce, he appeals to the General Assembly itself—to do what? Not to set aside the judgment of the Courts, but to inquire into the moral nature of the claim, and if it were found that in spite of the said statute, the State should in good conscience and equity repay him for moneys expended for public purposes, then it should exercise a power possessed by it to do justice and equity where the Courts, by reason of said statute, were rendered powerless to give relief. In response to such prayer, the legislature by the said act of 1914 allowed the said State board of claims to inquire into the claim and furnish it with the necessary information upon which to act, instructing it to disregard all technicalities and look alone to the natural justice of the demand. The result of the investigation of the board convinced the legislature that the State could not honorably retain the moneys, but that, in all equity and justice, he should be repaid, and the act of 1915 was the result. It will be seen from the above statement that the legislature in nowise attempts to overturn the decision of the Courts. The latter, in face of the statute, had no power to inquire into the equity or real merits of the demand, but the legislature had—and this it did—and having determined the justice of the demand from a moral standpoint, this Court will accept its conclusion in the future discussion of the matter now before us. The legislature having accepted and adopted the report of the board, in passing upon the matter before us, we will accept as true the findings of said board, which are as follows:

"Clerk's extra compensation. There was no reason assigned, or objection offered by counsel, why the claim for extra salary actually paid the clerk of the county board of commissioners (Douglas) should not be paid back, but we think it well to state our reasons for giving this class of claims our approval, amounting in the aggregate to $1,533.33. The salary of the clerk was fixed by statute at $500 per year, and the county board of commissioners allowed and approved claims of the clerk for $400 per year in addition thereto, as extra compensation for work for the county performed outside the duties of his office, such as visiting the work done upon the highways and paying the laborers; looking after the almshouse and outside poor. In this manner the clerk's entire compensation for services rendered the county was made $900 per year, all of which the board of commissioners, as well as the supervisor, approved. The work was, as the evidence shows, actually performed by the clerk and the county received the benefit thereof. We think this allowance a reasonable compensation. If we entertained any doubt upon the subject, it might be dispelled by the fact that in 1905, immediately after Mr. Owens went out of office, the salary of the clerk of the board was fixed by an act of the legislature at $900 per year—the same as that fixed by the board of county commissioners under Mr. Owens. We find that this salary was still further increased to $1,000 in 1911; to $1,200 in 1913, and to $1,500 in 1914. We, therefore, think it inequitable and unjust that the county should retain this money which was paid out in good faith upon the order of the whole board of commissioners for services rendered the county, and recommend that this entire amount of $1,533.33 be returned to Mr. Owens and his surety."

"In addition to the above, it may be stated that the facts as found by the board are admitted to be true by the respondents in the proceedings now before us. The respondents contend also that the result of the said act is

to grant a new trial to Owens and his sureties and to nullify the judgment of the Court, and cite 166 N. Y., 485, 60 N. E. 183, in the matter of Green.  I have not the report of the Green case before me, nor the Constitution of the State of New York which it is said to violate, but as already stated, the Courts could not, and did not, pass upon the merits of the Owens claim, but simply applied the provisions of the statute.  If the Court had rendered judgment upon the merits of the case, or if the judgment were in favor of the county in its private capacity, or a private person, then the legislature would be powerless to interfere, because, as stated in the extract from the Green case, *supra,* to do so would be to deprive the successful party of his vested rights; but from what has been previously said hereinabove, it will be seen that the county of Richland has no vested rights as against the State in the judgments referred to.  The respondents further contend that the title to the act of 1915 is not comprehensive enough to embrace the item appropriated for the benefit of Mr. Owens.  The intention was to pay a debt morally due by the county for value received by it, and is undoubtedly included in the phrase, 'county purposes,' and in the term, 'ordinary county purposes.'

"The respondents further insist that the act of 1915 violates article III, section 30 of the Constitution, which covers the matter of extra compensation for services rendered or contract made, and forbids the legislature to authorize payment of any claim under any contract not authorized by law.

"The extra compensation was allowed, according to the report of the board of claims, before services rendered and not after.  This so-called extra compensation, however, was allowed for extra duties imposed upon the clerk, and not for the performance of the duties devolved upon him under the statutes at the time that he went into office.  This extra compensation was not authorized by the statute law, therefore Owens forfeited to the State the amount paid out by

the board for such extra compensation, and he is not asking
the return of his money on account of any contract.
Although not authorized by the statute law, as already
stated, the county received full value for the extra moneys
paid to Douglas and which Owens was forced to pay, and
he claims that in equity and good morals the State should
reimburse him. I do not think, therefore, that the acts in
question violate the provision of the Constitution referred
to, even indirectly, but should I be mistaken in this view
and it be held that the letter of the Constitution be violated,
I do not think there could be any serious doubt of the
proposition that there was no violation of the spirit of the
said constitutional provision. The next subdivision of
point 3 is, is the act intended to levy a tax for a public
purpose, or is it a donation? If for a donation for a private
purpose, then the authorities are agreed that it is void. In
*Feldman & Company* v. *City Council,* 23 S. C. 63, it is
said: 'The power to levy a tax is founded on the right,
duty and responsibility to maintain and administer all the
governmental functions of the State and to provide for the
public welfare. To justify any exercise of the power
requires that the expenditure which it is intended to meet
shall be for some public service or for some object which
concerns the public welfare.' Owens received absolutely
no benefit from the moneys paid to Douglas except such as
any other citizen of the county received, but, on the con-
trary, the whole of it was paid for services rendered the
public. He derived no advantage in any shape or form
from the transaction, yet he has paid for such services, by
the judgment of the Court, out of his own private funds.
The legislature has recognized the injustice of forcing a
citizen to expend his private money for the benefit of the
public, and I fail to see how it can be said with any degree
of reason that the funds to be raised by the tax which has
been levied is for a private purpose. The legislature has
determined that in good morals and equity it is a *debt* due

Owens for moneys paid out by him for public purposes. It
has in effect determined also that the county of Richland
accepted and received the benefits for which Owens had to
pay, and as between private individuals, the demand is one
which the Courts could enforce, but which, on account of
the said statute, could not be enforced against the county.

"Has the legislature the right then to levy a tax to pay a
claim which is not enforcible in the Court of law, but which
in good morals the county owes? In *Farrish-Stafford
Company* v. *Lexington County,* 100 S. C. 311, 84 S. E.
1002, we find the following approved by the Supreme Court
of South Carolina: 'Many cases, State and Federal, declare
that power exists in the legislature of the State to provide
for and compel the payment of county debts, where the
claimant has acted in good faith and the county has received
the full benefit of the transaction and the claimant has suf-
fered an equivalent loss unless repaid.'

"If the principle above enumerated is a correct statement
of the law—and I think there can be no doubt that it is—
and was applied in Farrish-Stafford Company, *supra,* then
it certainly applies with greater force in the case at bar.
There are numerous reported cases where county officers
have lost public funds, through no moral fault of theirs, but
by their failure to comply with some statutory provision,
and the legislature has by enactment relieved them from
their liability for such loss, and such acts have been held
by the highest Courts in the land to be within its powers.
If this be true, then surely in the case at bar, where the
county has sustained no loss, but has received the full
benefits of the moneys sought to be returned to Owens and
his sureties, the legislature has the power to provide its
payment to him. As to the due process and equal pro-
tection clause of the Constitution, ordinarily the Constitu-
tion requires a law to be uniform and general, not special,
in its character, but such requirement is not enforced except
where a general law can be made applicable; which is not

so in the case at bar. As to the position that the matter is *res adjudicata,* so far as the Courts are concerned, this is true. It may never again be litigated in the Courts. No matter how just and honest morally the claim of Owens may be, he can never be afforded any relief in the Courts for the reasons already stated. This being true, he has turned to the only power under our form of government that can now furnish him relief, and that power has not turned a deaf ear to his prayer. A very interesting and instructive case upon the various phases of the matter now under consideration is that of *McSurely* v. *McGrew,* 140 Iowa 163, 118 N. W. 415, 132 American Decisions 248. The case involved the question of the power of the legislature to relieve from liability under a bond. On page 254 the Court says: 'Hence the legislature had the power, by proper enactment, to relieve defendant of his liability under the bond, a liability which was created primarily by the legislature, and which, in so far as the State and the various subdivisions thereof are concerned, may be changed at pleasure.' So in the case at bar, the liability was created primarily by the legislature, and this liability caused Owens that loss which resulted in a gain to the county in its capacity as a subdivision of the State. If the legislature had power to change said liability at will, then it may relieve from such liability, and if it may relieve from such liability before the penalty falls, then surely after the penalty has been incurred and paid, it may relieve by restoring such penalty where no loss has accrued to the county, but instead full benefit has been received by it.

"Finally, and lastly, I do not think that the conclusions reached by me in this matter conflict in any degree with the principle that 'what the legislature has no power to do directly, it cannot do by indirection.'

"It is, therefore, ordered that the demurrer of petitioners to the return be, and the same hereby is, sustained.

"It is further ordered that a writ of mandamus do issue, etc."

The respondents appealed on the following grounds:

1. That his Honor erred in finding and adjudging: "It is admitted that the county received and was a beneficiary of the services for which Clerk Douglas was so paid." And, again: "In addition to the above, it may be stated that the facts as found by the board are admitted to be true by the respondents, in the proceedings now before us." The fact being that no such admission was made by the respondents by the pleadings or orally. On the contrary, the adjudication in the case of *County of Richland* v. *S. H. Owens* has already determined this fact adversely to this finding of the board of claims.

2. That his Honor erred in deciding that the act of 1914, referring this to the board of claims, "was intended as nothing but a means of procuring facts relative to the claim in question;" and that said act and the determination of the board of claims was not judicial, because it was, in fact, an attempt by the legislature to confer and to exercise judicial powers through an agency and in a manner not provided for or authorized by and under the Constitution and laws of this State.

3. That his Honor erred in finding and concluding that the act of 1914 and the act of 1915, mentioned and referred to in his decree, did not contravene the provisions of the Constitution of 1895, section 17, article III, because neither of said acts contained anything in the title thereof referring to or embracing the matters in controversy herein.

4. That his Honor erred in finding and adjudging that the act in question was not an exercise of judicial power by the legislative branch of the government, and was not in violation of the provisions of our Constitution, forbidding the exercise by the legislative branch of the government of judicial powers, because the same was clearly an invasion of the judicial powers of this State in a manner not authorized by the Constitution and laws thereof.

5. That his Honor erred in finding and adjudging that the act in question making this appropriation did not violate the provisions of our Constitution, article I, section 5, and in finding that it did not deprive Richland county of its property without due process of law, and did not deprive said county of the equal protection of the law, contrary to the Constitution of this State and of the United States.

6. That his Honor erred in adjudging: "The suit against Owens was not brought by the county of Richland in its private capacity, nor to enforce a private right of said county," because the said action was brought for injury and loss to the county of Richland in its corporate capacity, and the recovery had therein was a part of the property belonging to said county in its corporate capacity.

7. That his Honor erred in granting the mandamus, because:

(a) The act of 1915 impairs the obligation of the contract and deprives the county of Richland of its vested property rights, contrary to the Constitution of this State and of the United States.

(b) The said act is the assumption of judicial power by the legislative branch of the government, and in effect an invalidating of a judgment rendered by that highest judicial branch of the government, contrary to the Constitution of the State.

(c) That the said act making said appropriation is in effect the allowance of extra compensation to a public agent and the authorizing of the payment of a claim on a contract not authorized by law, contrary to the provisions of the Constitution of this State.

(d) That the said act of 1915 levies a tax and appropriates taxes so levied for purposes other than those authorized by the Constitution of this State, article X, section 6; and is an appropriation of public funds for private purposes.

*Messrs. W. C. McLain* and *D. W. Robinson,* for appellant, cite: *Decision on claim:* 92 S. C. 335. *Respondents have no right to question the constitutionality of the statute:* 43 S. C. 16; 78 S. C. 348; 80 S. C. 127; Cooley's Const. Lim. (7th ed.) 231, 232, 341; 47 L. R. A. 512; 16 L. R. A. (N. S.) 270; 44 L. R. A. (N. S.) 88; 120 U. S. 101; 118 S. W. 425. *Exercise of judicial power:* 54 S. C. 24; 6 R. C. L. 160; 87 S. C. 290. *The legislature can not nullify the judgment of the Court:* 62 Am. St. Rep. 878; 1 Dillon Munc. Corp. (5th ed.), sec. 130; 1 McQuillan, Munc. Corp:, secs. 87, 224, 226, 239; Cooley's Const. Lim. (7th ed.) 502, 385, 137, and pp. 79-81, 333-4; 6 R. C. L., sec. 163; 54 Tex. 166, 167; 158 Mass. 509; 55 App. Div. (N. Y.) 482, 483; 166 N. Y. 492, 495; 62 Vt. 473; 13 Wis. 550; 64 N. Y. 98, 99, 104, 105; 20 Wall. 659; 166 N. Y. 495; 13 N. Y. 143. *Res judicata:* 5 Fed. 465; 1 Bail. Eq. 149; *Ib.* 324; 2 Keys 387; 45 Barb. 359; 48 L. R. A. 476. *Corporate rights and powers of county:* 35 S. C. 510; 29 S. C. 589; 9 S. C. 4; Civil Code, secs. 663, 985; 22 Am. & Eng. Ann. Cas. 1912a, 1063; 24 Mich. 44; 9 Am. Rep. 103; 28 Mich. 228; 15 Am. Rep. 202; 57 L. R. A. 755; *Ib.* 244; 100 S. C. 317. *Impairing obligations of contract, vested rights:* 94 Va. 28; Chitty, Contracts; 2; 1 Parsons, Contracts 7; 4 Keys 335; 62 Am. St. Rep. 878; 6 Cranch 87; 43 Ala. 224; 107 U. S. 348; 17 L. R. A. 611 and 614; Freeman, Judgments, secs. 219 and 241; 36 N. J. L. 389; 26 Hun. 546; 146 U. S. (36 L. Ed.) 925; 56 Am. Dec. 549. *Due process and equal protection:* 125 U. S. 181; 169 U. S. 520, 523; 4 Wheat. 519; 51 S. C. 53; 66 S. C. 37; 75 S. C. 68. *Reviews:* 13 Cal. 343; 51 Cal. 15; 21 Am. Rep. 677; 48 L. R. A. 473, 474, 476; 13 N. Y. 143; 132 Am. St. Rep. 248; 124 Iowa 267; 104 Am. St. Rep. 316; 68 S. E. 734; 137 Am. St. Rep. 281; Fed. Cas. No. 13156; 41 L. R. A. (N. S.) 98. *Title of act:* 91 S. C. 447; *Ib.* 450-454. *Tax not authorized by the Constitution:* Art. III, sec. 330; 21 S. C. 581; 62 Am. Dec. 433; 36 Fla. 196;

.33 L. R. A. 118, and note. *This is a donation:* 87 Tenn.
222; 20 Wall. 665; 35 Am. St. Rep. 762; 23 S. C. 62, 63.

*Mr. J. Fraser Lyon,* for respondent, submits: *Officers can
not raise constitutional questions to avoid performing duty
under the statute:* 20 S. E. 794; 58 S. E. 937; 78 S. C. 348;
61 S. E. 255; 80 S. C. 127; Cooley's Const. Lim. (7th ed.)
231, 232, 252, 257; 6 R. C. L. 77, 101, 102. *Functions of
board of claims:* Cooley, Const. Lim. (7th. ed.) 193; 173
U. S. 537; 38 L. R. A. (N. S.) 77; 6 R. C. L., Title Const.
Law 101; 69 S. E. 399; 87 S. C. 270, 290; Cooley, Const.
Lim. (7th ed.) 348; 11 Cyc. 342; Dillon on Mun. Corp.,
sec. 37, p. 67 (5th ed.); McQuillin, Munc. Corp., sec. 112;
42 S. C. 17; 19 S. E. 1019; 164 U. S. 576; 13 Cal. 343; 100
U. S. 557; 132 Am. St. Rep. 248, 140. *As to vacation:*
McQuillin Corp., sec. 236, p. 535; 1 Mo. 236; 13 Cal. 343;
173 U. S. 536; 95 U. S. 644; 13 S. E. 495; 6 R. C. L. 311;
107 U. S. 568; 61 Pac. 222; 172 U. S. 416; 38 L. R. A.
(N. S.) 77; 132 Am. St. Rep. 248; 64 N. Y. 98; 166 N. Y.
492, 494. *Corporate rights and powers:* Const., art. IX,
sec. 7; 80 S. C. 32; Civil Code, sec. 587; 82 S. C. 22.
*Restoration of money paid for benefit of county:* 6 R. C. L.,
secs. 340, 346; 1 Mo. 236; 44 Ind. 534; 102 U. S. 611;
43 S. C. 17. *Payment:* 78 S. C. 171; 132 Am. St. Rep.
248; 38 L. R. A. (N. S.) 87.

The Circuit Judges having been called to the aid of the
Court *en banc.*

December 17, 1915.

The opinion of the Court *en banc* was delivered by MR.
JUSTICE HYDRICK.

I cannot escape the conclusion that the act of the legisla-
ture appropriating money to pay the claim in question in
effect annuls in part the decision of this Court in *County of
Richland* v. *American Surety Co. and S. H. Owens,* 92 S.

C. 329, 75 S. E. 549, and is, therefore, conconstitutional, null and void, as an attempt to exercise judicial power.

This claim was before the Court in that case, and the right of the county to recover therefor was adjudicated. It was there contended that the extra allowance paid to the clerk was not as salary for performance of his duties as clerk, but for services required of him by the board outside of and in addition to his duties as clerk, and, for that reason, the extra allowance was not a violation of the statute, and that the county had received the benefit of the extra services, and was, therefore, bound legally and morally to pay for them. The Court was not fettered by any statute or want of power from sustaining those contentions, and did not reject them on any such grounds. If they had been proved by competent evidence, no doubt they would have been sustained under the authority of *Luther* v. *Wheeler*, 73 S. C. 83, 52 S. E. 874, 4 L. R. A. (N. S.) 746n, 6 A. & E. Ann. Cas. 754. But they were not sustained by the evidence, and it appeared that the extra salary allowed was for services as clerk, and that such allowance was in violation of the statute. Clearly, under the circumstances, the right of the county to recover the amount so unlawfully paid could not be relitigated in any Court; nor can the judgment of the Court thereupon be overthrown by the legislature, without violating the constitutional inhibition, that it shall not exercise judicial power.

I entertain no doubt of the power of the legislature to authorize, or even compel, a county to pay equitable or moral obligations, which could not be paid by the county authorities, or enforced in the Courts, on account of some irregularity or even for the lack of power in their creation, or for want of authority to pay or enforce them, or the lack of funds with which to do so, but this claim was not rejected by the Court upon any such ground, but upon the ground that it had been created and paid in violation of the positive prohibition of the statutes. Even if it were not *res judicata,*

it could hardly be contended that a claim so created and paid, without any proof of an emergency requiring such action, is based upon equitable or moral grounds.

For these reasons, as well as those expressed in the separate opinion of Mr. Justice Fraser, I am constrained to think that the judgment below should be reversed.

CIRCUIT JUDGES MEMMINGER and WILSON concurred in the opinion rendered by MR. JUSTICE HYDRICK.

MR. JUSTICE FRASER, *concurring.*    I concur in result with Mr. Justice Hydrick, but not in the reason set forth by him.

It seems to me that there was at that time no statute by which this claim could be paid.    It seems to me that if a title is declared defective at the time of suit, that would not prevent the holder from curing the defects in his title and having it afterwards declared good.    So, as there was no statute by which this claim could be paid, the judgment did not prevent the legislature from passing an act by which it could be paid, provided that act itself was not forbidden by the Constitution.

It seems to me that this act is forbidden by the Constitution and that art. III, sec. 30, forbids the payment of *"any claim under any contract not authorized by law."*    I think that prohibits this very thing, to wit, the making of a contract "not authorized by law" at the time it was made and afterwards securing payment of the claim by a subsequent statute.

The Constitution says to public officials, your contracts made in excess of your authority shall *not be paid.*

This act says it shall be paid, and is, therefore, unconstitutional.

CIRCUIT JUDGES GARY, SHIPP, BOWMAN and MOORE concur in the opinion rendered by MR. JUSTICE FRASER.

Circuit Judge Prince, *concurring.* I concur in the result on the ground that the act of 1915 is obnoxious to article III, section 17 of the Constitution, which provides that "every act or resolution having the force of law shall relate to but one subject and that shall be expressed in the title," and only upon that ground.

Circuit Judge Mauldin concurs with Judge Prince.

Circuit Judge DeVore, *concurring.* I concur for the above reasons, and for the further reason that the act of 1914 is obnoxious to the above section of the Constitution.

Mr. Justice Watts, *dissenting.* For the reasons stated by his Honor, Judge H. F. Rice, in his Circuit decree, it is my opinion that the judgment of this Court should be that the judgment of Circuit Court be affirmed.

Mr. Chief Justice Gary, Mr. Associate Justice Gage and Circuit Judge Sease concur in the opinion delivered by Mr. Justice Watts.