## 9044

### THE FARRISH-STAFFORD CO. v. LEXINGTON COUNTY.

(84 S. E. 1002.)

MUNICIPAL CORPORATIONS—COUNTIES—CLAIMS.

1. COUNTIES—DEBTS EXCEEDING FUNDS—STATUTORY CLAIMS.— Claims against a county for salaries of officers fixed by statute, for examination of lunatics, care of prisoners, payment of ferrymen, and other charges imposed by statute on the county and for supplies furnished to enable the commissioners to perform their statutory duties, are not debts contracted in violation of the statute forbidding the making of contracts in excess of funds on hand.

2. COUNTIES—DEBTS EXCEEDING FUNDS—SUFFICIENCY OF EVIDENCE.—In an action on claims against a county, evidence *held* not sufficient to show that the orders for the payment of claims were approved by the supervisors at a time when there were no funds on hand with which to pay them.

3. COUNTIES—CLAIMS AGAINST COUNTY—EXCEEDING FUNDS—POWER OF LEGISLATURE.—Where a county has received the benefit of services rendered, but the orders for payment are invalid because there were no funds to meet them at the time they were drawn, the legislature has power to compel the county to levy an assessment to meet such claims, just as it might order an assessment to meet claims which the State was under a moral obligation to pay.

4. COUNTIES—CLAIMS AGAINST COUNTY—EXCEEDING FUNDS—STATUTE.— The supply act of March 1, 1913 (28 St. at Large, p. 245), which provided for a two-mill levy in a certain county for the payment of outstanding claims against the county, provided the claimants should establish their claims in Court, authorizes the payment of such claims to those entitled thereto, notwithstanding the invalidity of orders issued for their payment, because there were no funds to meet them, since the issuance of void orders could not affect the legality of the claims.

Before DEVORE, J., Lexington, September, 1914. Affirmed.

Action by the Farrish-Stafford Company against Lexington County to establish certain claims. From a judgment for plaintiff, defendant appeals. The facts are stated in the Circuit decree, which was as follows:

This action was brought to establish certain claims against the county of Lexington under the provisions of an act to provide for the levy of taxes for county and school purposes for the fiscal year beginning January 1, 1913, in the sub-

division referring to Lexington county, approved March 1, 1913.

The complaint, in paragraphs 3 and 6, sets out the claims held by the plaintiff. The defendant county in its answer admits that the jurors and witness certificates mentioned in paragraph 6, and the claims upon which warrants had been issued for the year 1912, set out in paragraph 3, are valid claims, but on information and belief denied the ownership of these claims by the plaintiff, and set out as a defense against the claims of 1911, which are set out in the complaint in paragraph 3, and for which orders had been issued, that the supervisor of the county had made contracts and drawn warrants for the fiscal year for an amount in excess of the appropriation for the various county purposes for that fiscal year, and, further, that the orders or warrants drawn upon the county treasurer were so drawn at a time when there were no funds in the treasury to pay the same, and the statutory provisions relating thereto were plead as a defense.

An order of reference was made to R. E. Carwile, Esq., to take the testimony and report upon the validity of the claims. He has filed his report and finds therein that the plaintiff is the owner and holder of the said county claims set out in the complaint. He further reports that the jurors and witness certificates, and the warrants issued for the fiscal year 1912, are proper and valid claims against the county. The referee further found that the claims set out in the complaint as having been approved and allowed by the county commissioners for the year 1911 were valid county claims. To this report the defendant county filed exceptions to that portion of the same with regard to the claims which were approved by the county board for the fiscal year 1911, and for which orders had been made upon the treasury, but made no exceptions in any way to the findings as to the jurors and witness certificates and to the orders issued for the fiscal year 1912, or any other finding of fact.

The two exceptions raised by the defendant county are that the referee erred in holding that the testimony of the witnesses and the books and records offered in evidence for the purpose of showing that there were no funds appropriated or available to pay the warrants issued by the county supervisor between October 1, 1911, and January 1, 1912, was irrelevant and incompetent; and, second, because the referee erred in holding that the warrants set out in the complaint are valid claims, and that the county of Lexington was justly indebted to the plaintiff in the sums therein set out, when he should have held all the warrants drawn between October 1, 1911, and February 1, 1912, by the county supervisor are illegal and void because in excess of the appropriation made for which said warrants were drawn.

Under an order passed on the —— day of January, 1914, by consent of the respective counsel, the county treasurer has paid, upon presentation of a certified copy of such order, the certificates and warrants issued in 1912. So that the question now presented before me is as to the correctness of the report of the referee as to the county claims approved and allowed for the fiscal year 1911.

In the argument, or at the hearing, counsel for the county admitted that the first exception would be of no avail unless the second exception was sustained. I, therefore, will consider at once the second exception.

The referee found from the testimony introduced in evidence that the services for which these county claims were made were rendered in good faith and the county received the benefit therefrom, and that the plaintiff was the owner and holder thereof for value. As no exception has been made to this finding of fact, it is necessary, therefore, to give the history of the transactions resulting in the ownership of these claims by assignment from the Lexington Savings Bank through W. P. Roof, its executive officer, as collateral for the advance of $7,500.00 actually made to the county of Lexington, and that Roof, to secure his

endorsement thereon, and that the plaintff came by agreement with the said Lexington Savings Bank as such endorser into the ultimate absolute ownership of these county claims. I shall, therefore, proceed immediately to dispose of the first objection raised by exception No. 2, which is set out in the answer, that these warrants, upon these county claims, were contracts made by the supervisor of Lexington county in excess of the appropriation for the purposes for which the indebtedness was incurred, and after approval by the county board the warrants or orders were drawn.

The estimates upon which the legislature of 1911 based the levy contained in the supply bill were, according to statutory law, forwarded to the Comptroller General before the return for taxes upon personal property for 1911 had closed, and, in fact, the valuation of the railroad property in Lexington county and in other counties of the State was not made or assessed until some time in June. The claims which were presented to the referee by the plaintiff and sought to be established in this case include, upon inspection thereof, $1,297.35 for salaries of county officers. These officers are created by statute, and their terms of office and their salaries per annum are fixed. Whether the county board had anything but a ministerial duty to do in allowing the claims need not be here discussed. These claims which were issued on December 4, 1911, and January 4, 1912, represent the salaries of such county officers as the county treasurer, county supervisor, county auditor, county commissioners, county superintendent of education, magistrates, constables, etc. There certainly could be no violation of the statutory law in these cases of making contracts in excess of appropriations, because the county commissioners made no such contracts. They were the creation, so far as the features of a contract inhered in them, of the legislature, and it certainly was not illegal for these kind of county claims to be allowed or approved by the county board.

Further, $1,361.35 of these claims also represent necessary services fixed by the statute, and did not constitute any contract at all, but arose from the statutory duties imposed by law, and the compensation was fixed by statute. These are, for example, the examination of lunatics, payment of ferrymen, dieting of prisoners, and payment of convict hire and guards.

The supply bill of 1911 contemplated the building of a bridge and the permanent repair of the roads. In the remainder of these claims is to be found such as for the construction of bridges and expenses necessary thereto, chain gang on the working of roads, and, further, for supplies furnished to the poorhouse of the county, and which of necessity, the county commissioners were in statutory duty bound to make.

The testimony as reported does not show what month this work was contracted for or supplies were furnished. It only shows that the work was done "during the fiscal year 1911," but the claims were approved on December 4, 1911, and January 4, 1912. I am of the opinion, therefore, that the question as to whether the county commissioners exceeded their authority in making the contracts raised by the answer may be disregarded, not only as unproven, but that such county claims had been created by statute or were imposed as a part of the statutory duty of the county commissioners of Lexington county.

The next question raised by the exception is whether the warrants or orders which were issued upon these claims, after they had been itemized, audited, allowed and approved, were valid because at the time no report from the treasurer that there were no funds appropriated to pay them was before the board. As a matter of fact, there is no direct proof that these warrants or orders were drawn by the supervisor when there were no funds to meet them upon presentation, or that they had been presented at the time they were issued. It appears in the testi-

mony that the levy for ordinary county purposes and permanent roads was six mills and that the levy was made upon a total valuation of $5,601,987, which produced $33,611.38. Now, it is to be noted that not only the money advanced by the plaintiff, $7,500, but an equal amount, had been raised about the latter part of June from other sources for the purpose of current expenses. Taxes were payable by statute from the 15th of October to the 15th of March, and it must be assumed that they were being paid, certainly when these orders were issued on the 4th of December and 4th of January. Neither the treasurer nor his books were presented to show that at the time the orders were dated there was no money in the county treasury or on deposit for the county subject to payment of these claims. Mr. Wingard, clerk of the board, testified that there was only some rumor that there was not money in the treasury to meet the claims which were allowed on December 4th and January 4th, but he reiterates time and again that he had no personal knowledge whatever as to whether there was any money in the county treasury or not to meet the orders that were drawn in payment of these approved claims.

Without further notice of this testimony, I reach the conclusion that it does not appear that the charge that there was not money or funds on hand to pay the claims at the time they were issued were proven.

But I do not consider that these grounds are well taken, even if I should assume that they had been established as a matter of fact, which I do not. The complaint alleges the itemization, presentation, auditing and allowance or approval of these county claims, and that orders were issued directed to the county treasurer to pay them. The existence of the debt against the county was not destroyed by the illegal issuance of the order. The obligation to pay the claims still existed, both at law and as a moral obligation. As heretofore shown, appropriation had been made for such claims, the services and supplies had been rendered

and furnished to the county, an examination in accordance
with the statutory law had been made of the claims. pre-
sented, and the board of county commissioners had allowed
them.   The complaint, therefore, proceeded upon the allega-
tion of the existence of these claims.   The orders as set out
are only the mere evidence of the claims, and that the officers
of the county had approved and directed that the same be
paid.   If these orders were illegal, the mere issuance of
them could not destroy the obligation of the county to pay
them.   That there was no money in the treasury was not
a fact of which these claimants could have knowledge or
that the appropriation had been exhausted to pay them.
An order may not have been given at the time of the allow-
ance of the claim, but could have been given thereafter,
when funds were applicable to pay the same.   It was proven
by an exhibition of the books, as well as the admission of
the attorneys representing the county, and by the testimony
of Mr. Wingard, the clerk of the board, that claims were
*bona fide* in every respect, and that the county owed them.

Many cases, State and Federal, declared that power exists
in the legislature of the State to provide for and compel
the payment of county debts where the claimant has acted
in good faith and the county has received the full benefit
of the transaction and the claimant has suffered the
equivalent loss unless repaid.   Without citation of
authority, it may be said that where a public cor-
poration or municipal corporation has received the benefits
of a transaction, either by the purchase of goods, the receipt
of money or the performance of services, and the same may
not be enforceable at law on account of some irregularity or
violation of some statutory direction with regard to its pay-
ment, the legislature of the State is clothed with full author-
ity to compel a payment of the obligation in any manner in
which it may provide by levy for the collection of taxes
with which to meet the obligation.

"The power of the legislature to compel a municipality
to recognize moral obligations which have an equitable,

but not a strictly legal, basis, seems to be coincident with its general power to recognize such obligations as matters over which it has direct jurisdiction—that is, the legislature may compel a municipality or local subdivision to recognize a moral obligation resting on such municipality or local subdivision, if that moral obligation is of a class which the legislature may recognize in a claim against the State." Gray on Limitation of Taxing Power, sec. 634; Abbott on Public Securities, par. 31.

In view of the unanimity of the authorities upon this point, it would be useless to cite further authority.

The county received all the benefits of these services and of these supplies. The county board of commissioners examined into such claims, as they had authority to do, audited and approved the same. These were not contracts which they had made in excess of any appropriation. They were contracts directly made and fixed by the statute itself. It is expressly stated, and agreed on all hands, that there was not, and is not now, any taint of fraud whatever in the transactions, but it is claimed that two statutory provisions have not been complied with, which, I think, has no application to these claims, because of the terms of the act of 1913.

In this condition, there being no power in the county board to levy the taxes and pay the claims, the matter was brought to the legislature, and the legislature passed the provisions of the supply act of March 1, 1913, which were set out in the complaint and are as follows:

"Two mills for payment of outstanding claims against the county, for face value and interest thereon from the date of approval, provided the holders of said county claims shall establish such claims in the Court of Common Pleas for Lexington county."

It is to be observed that they are not for the payment of warrants issued in violation of any provision of the statute, but they are for the payment of claims against the county that may be established as such.

I was advised by counsel in argument of the case that there were no other claims than the claims set out in the complaint and nearly an equal amount held by the Palmetto National Bank, and on which the same kind of action was brought, and was taken up and heard immediately after this cause. The power of the legislature to pass such an act is beyond question. The claims contemplated by it were just such claims as these claims, which were *bona fide* incurred. The county of Lexington has received the full benefit of these transaction, and it will be unjust and unfair to permit the county of Lexington to reap the benefit and escape the moral obligation involved in the claims here presented. I am, therefore, of the opinion that the report of the referee must be confirmed and the exceptions thereto overruled.

It is, therefore, the judgment of this Court that these claims have been duly established as debts against the county of Lexington, in accordance with the terms of the act of the General Assembly, approved March 1, 1913, and entitled "An act to provide for the levy of taxes for county and school purposes for the fiscal year beginning January 1, 1913."

It is also ordered and adjudged that the plaintiff have judgment for seven thousand four hundred and ninety-nine and 19-100 ($7,499.19) dollars, the amount of the claims set out in the complaint, with interest thereon from their dates to the date of payment, from which shall be deducted the amount heretofore paid by the county treasurer under the order of this Court of date —— day of January, 1914.

It is further ordered that the plaintiff may present a certified copy of this judgment establishing said claims to the county treasurer of Lexington county and demand payment thereof, which said county treasurer shall pay the same out of said taxes so levied and in accordance with the terms of said act.

*Mr. J. B. Wingard,* for appellant, submits: *County board cannot contract debts beyond means furnished:* Civil Code, secs. 676, 994; Criminal Code, 532. *Act of 1913 does not validate claims, but merely authorized the Courts to determine their status.*

*Mr. C. M. Efird,* also for appellant, cites: 13 S. C. 262; 26 S. C. 192, 196; 92 S. C. 329, 335.

*Mr. B. L. Abney,* for respondent, submits: *Warrants evidence as vouchers and admissions by county officers that services were rendered to the county:* 10 S. C. 149; 18 S. C. 249, 250. · *This proceeding is to establish the claims in Court:* 18 S. C. 135. *Presumption that officers acted in good faith:* 10 S. C. 141, 153; 73 S. C. 83; 6 Ann. Cas. 754; 4 L. R. A. (N. S.) 746; 129 Ga. 801; 60 S. E. 149; 15 L. R. A. (N. S.) 567, and note. *Statutory liabilities of county:* 18 S. C. 251, 252; XXVIII Stat. 245. *Constitutional:* Const., art. IX, sec. 6.

March 31, 1915.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

For the reasons stated by his Honor, Judge DeVore, in his Circuit decree, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.