15770

O'SHIELDS *ET AL.* v. CALDWELL *ET AL.*

(35 S. E. (2d), 184)

*Messrs. P. D. Barron* and *J. R. Flynn,* both of Union, S. C., Counsel for Appellant Caldwell,

*Mr. Macbeth Young,* of Union, S. C., Counsel for Appellant

*Messrs. Daniel & Russell,* of Spartanburg, S. C., Counsel for National Surety Corporation,

*Messrs. Osborne, Butler & Moore,* of Spartanburg, S. C., and *J. Fred McLure,* of Union, S. C., Counsel for Respondents,

August 30, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the Opinion of the Court.

As the title indicates, this action was brought by respondents in behalf of their County of Union, after the formal refusal of the governing board to so proceed, against Caldwell, County Treasurer, and the surety upon his official bond. The latter two are appellants to this Court. The bond, in the amount of $40,000.00, was furnished in connection with the principal's term of office which commenced

July 1, 1939, and is conditioned in usual form that the treasurer shall well and truly perform the duties of the office then or thereafter required by law.

In 1939 the General Assembly passed Act No. 120 of that year, approved April 13, 1939, 41 St. at Large, p. 173, now Section 4830-5 of the Code of 1942, whereby the fees of certain county officers which formerly accrued to them as part of their compensation were made the property of the county and it was provided that the officers should thereafter receive as sole compensation salaries and expenses, annually designated and provided by the supply act for said county for each year, respectively, except that the sheriff should collect for himself the fees and costs for serving, as constable, process issued by the magistrate at Union.

Thereafter this plan of county government for Union was followed by the General Assembly and there were annually designated and appropriated in the succeeding county supply acts salaries in compensation of the county officers, who accepted them, respectively, until March, 1943, when there was approved on March 11th of that year Act No. 350, 43 St. at Large, p. 1088, which was entitled "To Make Appropriations to Reimburse Certain County Officers for the Difference in Their Respective Legal Fees and Salaries and Their Respective Fees and Salaries Because of Legislative Changes Made During the Respective Terms of Office for Which They Had Already Been Duly Elected or Appointed." The title was, in effect, repeated in section 1 of the Act and Appropriations were captioned and purported to be made as follows :

"Reimbursement Purposes

"1. J. S. Betenbaugh, County Auditor, ......$ 2,472.05

  2. W. F. Caldwell, County Treasurer, .... 4,687.80

  3. R. C. Williams, Former Clerk of Court, .. 2,148.94

  4. G. S. Noland, County Coroner, ........ 738.30

5. James Greer, County Supervisor ........    325.00

6. Estate of J. G. Faucett, deceased, late Sher-
    iff of Union County, ............ ....  3,327.65

7. L. B. Godshall, Magistrate, Union Town-
    ship, ............................  1,600.00

$15,299.74."

Sections 2 and 3 are as follows:

"Section 2. The County Supervisor is hereby authorized, empowered and directed to draw respective warrants for the payments of the sums of money according to the items set forth in the foregoing Section of this Act, and the same shall be duly paid by the County Treasurer out of the general funds of Union County upon the proper presentation of the said warrants to the County Treasurer according to law and the provisions of this Act.

"Section 3. The reimbursement payments provided for by this Act shall be in lieu and bar of any and all further claims or demands against Union County by any officer, former officer, or legal representative of any deceased officer receiving reimbursement payments, under the provisions of this Act, for the differences in their respective legal fees and salaries and their respective fees and salaries because of Legislative changes made during the respective terms of office for which they had been duly elected or appointed."

It is noted that officers were included, to wit, coroner, supervisor and the Union Magistrate, who were theretofore compensated only by salaries, except the magistrate's civil fees, and there is no explanation of record why they should have been included, and some of the constitutional questions hereinafter discussed are not relevant to them. Incidentally, the Probate Judge, formerly fee-paid, did not participate.

The decision of *Salley v. McCoy,* 182 S. C., 249, 189 S. E., 196 (and many later ones following it), condemned

as unconstitutional special acts of the legislature relating to the compensation of county officers passed prior to the constitutional amendment of 1935 (the present proviso to subsection IX, Section 34, Article 3, 1 Code of 1942, page 1218) which expressly removed the constitutional objection; and *Scott v. Anderson County*, 195 S. C., 92, 10 S. E. (2d), 359, approved the method of change followed by the legislature in this case, that is by the enactment of a statute independent of a county supply act (of insufficient title) whereby the transition of compensation of county officers in whole or in part by fees was made to salary alone.

The complaint contains allegations of the facts which have been summarized above and that warrants were issued by the county supervisor and honored by payment by the defendant treasurer on the day following the approval of the Act of March 11, 1943 (except to the deceased sheriff, which was paid on April 5, 1943, to his representative), before the County board had met and before knowledge of such anticipated action was known among the taxpayers, which (quoting) "sudden, speedy, surreptitious and immediate action was a part of the intent and purpose of the defendant * * * treasurer * * * to misappropriate to himself personally and to divert to the other beneficiaries of said Act (of 1943) the amounts therein mentioned." Then the complaint alleges, in effect, that the county and its taxpayers have been damaged in the aggregate amount of such payments as the result of (quoting) "the negligent, careless, wilful and knowingly committed wrongful, illegal, and unlawful acts" of the treasurer acting in such capacity and by virtue of his office, wherefore judgment is demanded against both defendants for such aggregate amount with interest from the dates of payment, and costs.

The complaint also contains several allegations of unconstitutionality of the Act of 1943, but we think it necessary only to refer to its patent violation of article 3, section 30,

which plainly prohibits the granting of extra compensation, fee or allowance to any public officer, agent, servant or contractor after service rendered or contract made. *Lyon v. Patterson*, 102 S. C., 525, 87 S. E., 306. As mentioned, there are several other provisions of the fundamental law which were alleged to have been violated by the act, some of which were sustained by the Circuit Court judgment under review, but that mentioned is so obvious that the case need not now be burdened with the unnecessary consideration of them. It was further alleged that it was the statutory duty of the treasurer to safely keep, transfer and disburse the funds of the county for legal and constitutional purposes only, and that he was forbidden to make payment for unconstitutional purposes, section 4819, 1942 Code; and that it was unlawful for him to knowingly pay any extra allowance to any person who is paid by salary, section 3879. Other code provisions are alleged to have been violated, but they need not be separately considered. Paragraph 15 of the complaint is as follows:

"15. That the defendant W. F. Caldwell, acting as Treasurer of Union County, and by virtue of and through his position of Treasurer of Union County, has paid to himself the sum of $4,687.80, which he has thereby unlawfully appropriated to his own use from the public funds of Union County, and has thereby further breached his official bond to that extent, and he and his surety are liable on that further account for that sum."

And paragraph 19:

"That among other persons to whom payments were directed to be made by said Act of 1943, and to whom the defendant, W. F. Caldwell, as Treasurer of Union County, actually made such payments, was the defendant W. F. Caldwell himself; that without regard, and in addition to the other reasons herein set forth why such payments were un-

lawful, plaintiffs further allege that the defendant W. F. Caldwell, in his capacity as Treasurer of Union County, had actual knowledge that he personally was not entitled to the sum directed to be paid to him, and which, in fact, he did pay to himself personally; and he further had actual knowledge that such payment to himself was unjustified, unlawful, and without any legal foundation or excuse; but notwithstanding his actual knowledge of all such facts, and of the violations of law therein involved, he deliberately, intentionally, wrongfully, illegally and knowingly paid to himself from the public funds of Union County the sum of $4,687.80."

Following the latter quotation it is alleged in the complaint that by reason of the treasurer's personal participation in such unlawful payments he knew that the other recipients were not legally entitled to the payments to them but the treasurer (quoting) "by virtue of his office, deliberately, intentionally, wrongfully, illegally and knowingly paid to each of such persons named in said Act the respective amounts stated therein, all from the public funds of Union County, in violation of law and in breach of the official duties of the said W. F. Caldwell, as Treasurer of Union County."

Defendants' several attorneys moved before the resident Circuit Judge to strike various allegations of the complaint as irrelevant, redundant, immaterial and conclusions. The most important point of the motion was the first, that the allegations undertaking to characterize the actions of the treasurer as willful, knowing, etc., were subject to it; but, as will hereinafter be developed, such allegations are important in connection with the issue of the good or bad faith of the officer, and they were properly allowed to remain in the complaint. The Court overruled the motion in its entirety and there is no pending appeal.

There was also a special demurrer to the complaint which was heard by the resident Judge, in the decision of which he ruled upon the single point which was then made by the defendants that there was a defect of parties for that Union County, as such, should be in the action as a trustee for its members, to receive any recovery that may be had. This the Court overruled upon the ground that the action was brought for the express benefit of the county and that it would be improper to implead it also as a defendant, which would appear to place the county in an adversary position to itself. In this there was no error.

Thereafter the defendants demurred generally to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action because (1) the payments were made pursuant to a statute, the validity or constitutionality of which the treasurer, a ministerial officer, had no authority to question, (2) the Act of 1939, depriving the county officers of their fees, was unconstitutional, because it related to two subjects (article 3, section 17, Constitution of 1895), to wit, (a) transferring the ownership of the fees to the county, and (b) providing other compensation for the officers; but, it is further alleged in the demurrer that the second subject or object was not fulfilled because, instead of including the "other compensation", it was provided that the officers should receive such salaries and expenses as may be annually provided in the county supply act; (3) that the act is in violation of the constitutional amendment of 1935 to article 3, section 34, subsection 9, for it fails to fix the amount and manner of compensation of the Union County officers; and (4) the act is violative of the Federal constitutional guaranty against the impairment of obligations of contract in that it was enacted after the affected officers had been elected. But the last mentioned point has been abandoned. The fifth point of the demurrer is that the Act of 1943 is constitutional as a proper recogni-

tion and effort to cure the injustice of the Act of 1939 and a proper compromise of potential claims against the county arising from the "doubtful constitutionality" of the Act of 1939 (quoting), "even should that Act be held constitutional."

The defendants also answered by which the formal allegations of the complaint were admitted but the constitutionality of the Act of 1939 was denied upon stated grounds, all of which we shall consider as raised by the demurrer; and it was admitted that the payments were made, as alleged in the complaint (including that to the treasurer himself), but, quoting, "in compliance with the terms and provisions of the said Act (of 1943) for the purposes therein set forth upon warrants legally issued and presented"; and all allegations of negligence and willfulness were denied. The specification of alleged unconstitutionality of the Act of 1939, contained in the separate answer of the treasurer, are covered in the points similarly made by demurrer, which have been stated.

The separate answer of the Surety Corporation contains no matter of defense not set up in the answer of its principal, the defendant treasurer, and is brief, to the effect that the Act of 1939 is unconstitutional and the Act of 1943 constitutional.

The plaintiffs moved to strike from the answer of Caldwell as irrelevant, redundant, constituting no defense, and being conclusions of the pleader and conclusions of law, allegations to the effect that (1) the Act of 1939 is unconstitutional, (2) the Act of 1943 "cures and remedies the wrongs and injustices caused by the Act of 1939"; (3) that the payments were made by the treasurer upon usual warrants of the supervisor, as required by the Act of 1943, which was the treasurer's duty; and (4) the allegations of unconstitutionality, and the reasons thereof, of the Act of

1939. Plaintiffs also moved upon the same grounds to strike similar allegations from the answer of the Surety Corporation.

Plaintiffs' motions to strike from the answers and defendant's demurrer to the substance of the complaint, the material contents of all of which have been stated, were heard together by the presiding Judge who rendered his decree on October 24, 1944, in which he dealt in detail with all of the legal positions of the various parties and concluded that the Act of 1939 is constitutional, the Act of 1943 unconstitutional upon several grounds, and that accordingly the motions of plaintiffs to strike from the answers should be granted. Included in his holdings is that under the allegations of fact contained in the complaint, necessarily admitted by the demurrer thereto, the appellants are not entitled to the defense of good faith of the treasurer in the making of the challenged payments. That is a difficult and determinative question in the appeal.

There were three briefs filed in behalf of the two appellants. The first for Caldwell states the questions raised by the exceptions to be substantially as follows: (1) Was it error to overrule the defense that the payments were made pursuant to the 1943 Act, the validity and constitutionality of which the treasurer had no authority to question, it imposing a ministerial duty upon him, which protects him and his surety from liability? (2) Is the Act of 1939 constitutional? (3) Was it error to decide on demurrer that the appellants are liable for the treasurer's disbursements under the 1943 Act because there were no county funds legally applicable thereto? (4) Was the Act of 1943 constitutional? (5) Was it error to strike from the answers the allegations of the alleged unconstitutionality of the Act of 1939 and the constitutionality of the Act of 1943? (This is of no importance in view of the conclusions we reach upon the valid-

ity of these acts, respectively.) (6) This is a restatement of question (1) above, but relates expressly to the alleged error in striking from the answer of Caldwell the allegation that he paid the questioned county warrants in accord with his ministerial duty.) and (7) Does the judgment under appeal exceed the scope of the demurrer and adjudicate an issuable fact, to wit, the good or bad faith of the treasurer?

The second brief in behalf of the appellant-treasurer, submitted by the venerable and highly esteemed Macbeth Young, Esquire, is not prefaced by a statement of the questions which he deems to be involved, but we have read and considered it with interest and profit. The separate brief of the appellant, National Surety Corporation, adopts the questions submitted in the main brief of Caldwell, which are stated above in substance, and adds another, which is as follows: "Was it error, in ruling on a demurrer, to convict the defendant Caldwell of bad faith, when, even if the complaint sufficiently alleged that accusation, he would be entitled to plead and prove that he acted upon advice of counsel, which is a complete defense?"

The basis of this added question is a fact not alleged before the pendency of the appeal, to the effect that the treasurer sought the advice of "the county attorney" before he paid the attempted appropriations under the act of 1943, and that the attorney advised him that he could not refuse to make the payments. It is remarkable that this was not alleged in the answer, for it appears that this attorney is of counsel for Caldwell. However, should the answer be hereafter so amended, evidence of this transaction will be admissible as pertinent upon the issue of good faith as it relates to the payments to the recipients other than Caldwell, for the trial of which the case will be remanded.

Because we are able to eliminate several of the perplexing constitutional questions decided by the trial Court, we need

not deal with so many as he did and should thereby be briefer. All such that need be now decided, in our view, are the validity of the Acts of 1939 and 1943, respectively, and whether the established rule that a ministerial officer is without right to decline to act in accord with the terms of a statute, protects from liability a county treasurer and his surety for payment of public funds under authority of an unconstitutional act. As will be seen, it is necessary to divide the latter question and determine whether there is a distinction between payment by the treasurer to others and payment to himself.

Taking these questions in order, is Act No. 120 of 1939 (41 St. at Large, p. 173, now section 4830-5 of the 1942 Code) unconstitutional? It was undoubtedly passed pursuant to the authority of the amendment to subsection IX, section 34, of Article 3 of the Constitution, which was ratified by the General Assembly of 1935, after adoption by the people in the preceding general election, and is as follows:

"Provided, That the General Assembly may enact local or special laws fixing the amount and manner of compensation to be paid to the County Officers of the several counties of the State, and may provide that the fees collected by any such officer or officers, shall be paid into the treasury of the respective counties."

It is noted that the authorization is for special enactments (quoting) "fixing the amount and manner of compensation to be paid * * *." The significance of this repetition will be seen in a moment. *Scott v. Anderson County, supra,* held that such an act was proper and necessary in view of the futile attempts, involved in that case, of the Legislature to insert similar provisions in the insufficiently entitled annual supply acts of Anderson County; and the case of *Boggs v. O'Dell,* 190 S. C., 442, 3 S. E. (2d), 486, was referred to

and the special act of 1938 affecting Pickens County in the latter case was mentioned approvingly. Reference to the Pickens Act, No. 909 of 1938, 40 St. at Large, p. 1826, discloses that it is very similar to the Union act of 1939, now under review. But without the authority of these former adjudications, it is found after consideration that the act under attack is in fair compliance with the constitutional authorization, the amendment of 1935.

However, appellants assail the Act of 1939 upon two constitutional grounds, first, that it violates section 17 of Article 3 which requires that an act shall relate to but one subject and that shall be expressed in the title and, second, that it does not comply with the constitutional amendment of 1935, just set forth above.

The second objection has, we think, already been satisfactorily considered and disposed of. The gravamen of the argument is that the act failed to fix the amount of compensation, which seems to contemplate that in order to comply with the constitution such an act should contain an unalterable schedule of salaries. But such cannot reasonably be held to have been in the minds of the framers in view of the well known, and constitutional, practice of the General Assembly in regulating ("fixing") salaries in the state and county appropriation or supply, acts; and the frequent sometimes annual for long periods, changing of the compensation of public officials and employees, state and county, except those few state officials whose salaries are constitutionally unchangeable during their respective terms of office. And even a salary act permanent in form is subject to annual amendment by means of such appropriation and supply acts. *Plowden v. Beattie,* 185 S. C., 229, 193 S. E., 651, and the several state and United States authorities therein cited. Public officers have no contract or property rights in their offices, and subject to special constitutional restrictions (not

here present), the General Assembly has complete control of them. *State v. Rhame,* 92 S. C., 455, 75 S. E., 881, Ann. Cas., 1914-B, 519.

The act is very like that of Pickens County, which has been referred to. 40 St. at Large, p. 1826. It provides salaries for the formerly fee-paid officers, quoting, "as may be prescribed by the General Assembly and annually appropriated by it for such purposes." Numerous other similar county acts have been noted which proceed upon the same plan. Indeed, in view of the common practice of almost, if not quite, annual salary changes by the Legislature, the scheme of these special acts, referring to the annual county appropriation acts for the schedule of salaries, would seem to be the simpler and more satisfactory plan. These subsequent enactments become a part of the original salary act anyway, or override it, so why may not they be prospectively referred to in it? We see no valid objection.

Earnest argument is made in behalf of appellants that such power is dangerous and far-reaching in the hands of the Legislature and enables them to wield, quoting, "a financial whip over various county officers resulting in political bossism, political rings and domination of such county officers." But counsel overlook the fact that the state and its subdivisions are governed by the General Assembly, under the constitution and subject to the veto power of the Executive, and the proper sphere of the Court in this respect is only to interpret the constitution and the enactments of the General Assembly, and decide the constitutionality of the latter when properly attacked. Our political views and the views of litigants and their counsel upon the wisdom or expediency of the provisions of the constitution and of legislative acts are of no importance, and should be of no influence, in litigation.

Recurring to appellants' first ground of constitutional attack on the salary act of 1939, it is found that this question is closely related to that just considered. It is, in effect, that the title expresses more than the act contains, and thereby violates section 17 of Article 3 of the Constitution of 1895. This is a novel position and its like is not found in the former decisions of the Court. There is such an exhaustive annotation under the publication of the provision in the present Code (1942 Code, Vol. I, beginning at page 1205) that reference to it should be sufficient to dismiss the present contention. But more will be briefly said.

The plain purpose is to prevent surprise or fraud upon the Legislature by reason of provisions in pending bills of which fair notice is not given in the title; and to apprise the people, through the publication of legislative proceedings, that the subjects embraced in the titles of pending bills are under consideration, so that they may petition or otherwise participate in the consideration of proposed laws. The conclusion is inevitable in this case that the title properly advertised the purpose and content of the bill which upon passage and approval became an act, particularly in view of the liberal construction of this constitutional provision that has heretofore been followed.

The unusual attack in this case, already mentioned, to the effect that the content of the title was greater than that of the act, is doubly answerable. In the first place, there is no multiplicity of subjects, and therefore no violation, for the transfer of the county officers from the former fee basis of compensation, the vesting of the fees in the county, and the provision for annual salaries to be appropriated in lieu in the subsequent county supply acts are all one, and so related as to make a proper single subject, or object, of a legislative act. This we think must be concluded from a mere reading

of it. Furthermore, appellants' assertion that the officers were not provided salaries by the act, despite the promise thereof included in the title, is not, in fact, tenable. This because the act expressly provides that the officers, quoting, "shall receive as compensation for their services such salaries and expenses as may be annually designated and provided for in the supply act of said county" in lieu of the former fees, except that the sheriff shall retain the fees for serving the process of the Union magistrate.

From the foregoing it is found that the Union County Salary Act of 1939, No. 120, 41 St. at Large, p. 173, now section 4830-5 of the 1942 Code, was and is constitutional and valid, and effective for the purposes therein stated. In this view, it has not been necessary to consider respondents' point, that the objections to the title vanished upon the adoption of the Code of 1942, of which it is a part; also unconsidered, because unnecessary, is the further related point that in the self-styled reimbursement act of 1943, which is found herein to be unconstitutional in its provisions, there were included payments to some county officers who never received fees, and were not affected by the salary act of 1939; and similarly passed over is the consideration that the "reimbursement" provided by the Act of 1943 for at least some of the officers, covered periods beyond the terms of office to which they had been elected prior to 1939, contrary to its title and terms. These are interesting questions but are wholly unnecessary to be decided in view of the controling conclusions that the act of 1939 is constitutional and the act of 1943 unconstitutional, and, therefore, the latter is invalid.

The last statement anticipates the holding that the "reimbursement" act of 1943 is in violation of the constitution, which is also in affirmance of the judgment of the Lower Court. This is the second cardinal ques-

tion presented by the appeal. The act is practically set forth in full hereinabove.

The argument upon this point in the main brief for the appellant Caldwell is surprisingly short, but logically so because it is based upon the premise that the Act of 1939 was unconstitutional. If it were (and it has been found not) there need have been no Act of 1943 at all. In other words, if the effort of the General Assembly of 1939 to change the former fee officers of Union County to a salary basis of compensation had been futile, for unconstitutionality of the act thereabout, then the fees would have continued to be the property of the respective officers and they would have needed no enabling act of the Legislature to recover them. But the problem is not so simple for the Act of 1939 was valid, which circumstance in itself, under the constitution, renders the Act of 1943 void.

The trial Court so found upon several grounds but, as heretofore indicated, we think the first found is enough, that is that the act was plainly violative of section 30 of Article 3 of the Constitution of 1895 wherein it is provided as follows: "The General Assembly shall never grant extra compensation, fee or allowance to any public officer, agent, servant or contractor after service rendered, or contract made, nor authorize payment or part payment of any claim under any contract not authorized by law * * *." Indeed, the act convicts itself of violation by its very terms when it recites that it "reimburses" the officers for the reduction in their former compensation to the date of the enactment, and purports to appropriate such, which is clearly a grant of extra compensation after service rendered—in direct violation of this salutary constitutional provision. The trial Court observed, and we agree, as follows: "Unless such a construction be given to this provision of the constitution, and unless this act be struck down as violative of that constitutional provision, then there is no protection against the

appropriation of any amount of funds, at any time, for the payment to public officials of unlimited amounts of additional compensation after they have already rendered their services and have been paid the compensation which was provided therefor."

The only former decision of this Court which has come to our attention in which the cited section was applied is that of *Lyon v. Patterson,* 102 S. C., 525, 87 S. E., 306, the full history of which is found in the earlier decisions reported in *County of Richland v. Owens,* 86 S. C., 545, 68 S. E., 753, and *County of Richland v. American Surety Co.,* 92 S. C., 329, 75 S. E., 549. It appears that the supervisor and county board of Richland County undertook to pay their clerk $400.00 more per year for his services than had been appropriated by the Legislature. In an action by the county, the supervisor and his bondsman were required to repay to the county the total amount of such surplus (over the appropriation) which had been paid to the clerk. Thereafter the Legislature appropriated such sum for payment to the supervisor in "reimbursement" of him or his surety. But the successor supervisor refused to pay and this Court held, *en banc,* that the attempted legislative appropriation was unconstitutional in view of section 30, Article 3, quoted above. The majority of the *en banc* Court held that the obligation was illegal as for a contract not authorized by law, meaning the agreement between the county board and the clerk to pay the latter extra. But we think the authority is none the less applicable here for the attempt of the act of 1943 was to provide "extra compensation * * * after service rendered," the words of the constitution.

But it is argued that the Act of 1943 was in the nature of a compromise, or settlement of a moral claim, for which *Farrish-Stafford Co. v. Lexington County,* 100 S. C., 311, 84 S. E., 1002, is cited. However, we think there is no reasonable basis for such a theory. We

have found that the transfer of the officers from a fee-compensation plan to one of salary, accomplished by the Act of 1939, was constitutional and otherwise legal and valid, so there was no "doubtful" or other obligation on the part of the county to return its savings thereunder to them, and nothing to compromise; and likewise no moral obligation arose which would come within the reasoning urged in this connection by appellants.

A public employer, here a county, may reduce the compensation of its officers by means of legislation, in the absence (as here) of constitutional restraint; and the fact of such reduction implies and raises no moral obligation to later return the amount of the reduction. Thus analyzed, appellants' position on this point is entirely untenable, and such is emphasized when it is taken into consideration that the contention is bottomed upon the premise that the compensation of the officers was reduced during the terms for which they had already been elected or appointed, which is certainly not true of the entire period with respect to the magistrate, whose term of office is limited by the constitution to two years. Respondents say in argument that the terms of some of the other officers also expired between the effective date of the salary act of 1939 and the passage of the "reimbursement" act of 1943, but it is entirely unnecessary to pursue the point. *Craig v. Pickens County,* 189 S. C., 164, 200 S. E., 825.

The authority relied upon by appellants in this connection, *Farrish-Stafford Co. v. Lexington County, supra,* is dissimilar from the present problem in every material respect. There recovery was allowed under an enabling act for jurors' and other services rendered and merchandise furnished a county, and the only defense to the obligations was that the claims therefore were issued by the county board when there were no funds in the treasury for payment, contrary to statute, upon which defendant failed in proof.

We find no reasonable doubt of the constitutionality of the Act of 1939 and no immorality in the reduction in the amount of compensation of the county officers affected, so, as seen, there was no moral obligation which it can be reasonably contended would justify the unlawful appropriations attempted by the Act of 1943. The latter, then, is clearly unconstitutional for the reason which has been discussed. None of the other grounds of invalidity, some upheld by the trial Court, need be considered in this appeal.

It is unnecessary to decide in this case, but offhand we think that the General Assembly, having changed by proper legislation (as here in 1939) from a fee basis of compensation of all or any of the officers of a county to salaries, may revert to the fee system by proper prospective enactment, but not thereby retroactively increase the compensation of any officer without colliding with the constitution in the particular pointed out. Sec. 30 of Art. III.

Counsel call attention to the legislative attempt in 1944 (during the pendency of this action) to "validate" the payments which gave rise to the litigation by passage of an act, 43 St. at Large, p. 2189, entitled as follows: "An Act to Validate the Acts and Proceedings of Certain Officers of Union under the Provisions of Act No. 350 of the Acts and Joint Resolutions of the General Assembly of the State of South Carolina, 1943, Commonly Known and Referred to As the Reimbursement Act."

Mention is made of the latter only to assure counsel that it has not been overlooked. It is elementary that the General Assembly cannot validate or ratify that which it could not constitutionally authorize or direct in the first place. 16 C. J. S., Constitutional Law, Section 422, p. 877; *Lancaster v. Town Council of Brookland,* 160 S. C., 150, 158 S. E., 233.

This brings us to what may be called the crux of the ▮ ▮ case, the question whether the appellant treasurer was required or empowered by the passage and approval of the invalid 1943 act to make the payments therein provided, regardless of his interest and knowledge. The principle, urged by him and his surety as a defense from liability, is commonly called the "ministerial officer rule," to the effect that a ministerial officer of the government may not ordinarily resist compliance with, or decline the enforcement of a statute, upon the ground of his view that the act is unconstitutional or otherwise invalid. A county treasurer is a ministerial officer who may also be equally accurately styled administrative. The decisions use the terms interchangeably. 42 Am. Jur., 900. With respect to official funds in hand he is a trustee for the public. *York County v. Watson*, 15 S. C., 1, 40 Am. Rep., 675; *Sumter County v. Hurst*, 189 S. C., 316, 1 S. E. (2d), 242.

"The obligations of public officers as trustees for the public are established as a part of the common law fixed by the habits and customs of the people. Among their obligations as recipients of a public trust are to perform the duties of their office honestly, faithfully and to the best of their ability * * * (and) to use reasonable 'skill and diligence * * *. Every public officer is bound to perform the duties of his office honestly, faithfully, and to the best of his ability, in such manner as to be above suspicion of irregularities, and to act primarily for the benefit of the public." 43 Am. Jur., 77, 78. The fact that the treasurer in this case was vitally, personally interested in the payment to himself put upon him, in the sight of the law, the strict necessity of being a model "Caesar's wife". 43 Am. Jur., 81. These are not mere platitudes but important principles, necessary to be observed and enforced, particularly in a democracy.

The ministerial officer rule has been approved and applied in former decisions of this Court, recently in *Greenville*

*County Fair Ass'n v. Christenberry,* 198 S. C., 338, 17 S. E. (2d), 857, and *Town of Belton v. American Employers Ins. Co.,* 199 S. C., 88, 18 S. E. (2d), 612. But, like most legal rules, it has its exceptions, one of which was pointed out in the *Christenberry case* and arises when the officer's rights are adversely and injuriously affected by the operation of the statute. This exception exists for his protection. It is at least equally important that the government be correspondingly protected from loss and injury, and justice demands that in a situation like the present (certainly insofar as the treasurer's payment to himself is concerned) a duty be raised upon the officer to act (or decline to act) in the interest of the government, or proceed otherwise at his peril.

Many discussions of, and decisions under, the rule have been read for the purpose of this decision. It is stated briefly in 43 Am. Jur., 79 : "As a general rule, subject to certain exceptions, officers must obey a law found in the statute books until in a proper proceeding its constitutionality is judicially passed upon." Again, in the same volume at page 97 : "Officers are not liable for paying out public money in reliance on an unconstitutional statute where the payment was made in good faith before the law was held unconstitutional." And on page 112 : "It is in general held that officers are not liable for paying out public money in reliance on an unconstitutional statute where the payment was made in good faith before the law was held unconstitutional." The conclusion of the editor of C. J. S. is more qualified; the following is quoted from Volume 16, Constitutional Law, at page 175 :

"Stated otherwise, it is generally held that a mere subordinate ministerial officer, to whom no injury can result and to whom no violation of duty can be imputed by reason of his complying with a statute or ordinance, will not be allowed to question its constitutionality; but that the constitutionality of a statute may be ques-

tioned by an officer who will, if the statute is unconstitutional, violate his duty under his oath of office, or otherwise render himself liable, by acting under a void statute. * * * Notwithstanding these various conflicting views *it is generally held that the constitutionality of a statute authorizing disbursement of public funds may be questioned by the officer on whom the duty of disbursement is imposed,* although there is also authority to the contrary." (Emphasis added.)

Valuable annotations upon the general subject are in 30 A. L. R., 378, and 129 A. L. R., 941. There is quoted from 30 A. L. R., 379, the following conclusion of the author, with the emphasis added:

"Despite, however, the conflicting points of view which have been taken, which have resulted in apparently conflicting decisions on the question under annotation, the courts seem in general to have followed a line of thought which, though not expressly or definitely brought out, or always adhered to, furnishes a general rule commonly applied; and that is that a merely ministerial officer, whose duties are of a subordinate character, *imposing on him no personal obligation or liability,* is not allowed to question the validity of a statute in a mandamus proceeding to compel his obedience thereto. Practically, however, when the constitutional objection is probably well taken and the consequences of enforced obedience to the statute, if in truth unconstitutional, would be serious, *the courts not infrequently avoid the effect of the rule by making an exception where public interest is involved, or where in the circumstances the obedience to the requirements of the statute would violate the oath of office.*"

The appellant surety company cites in its brief, and relies upon, the leading case of *State ex rel. Atlantic Coast Line R. Co. v. State Board,* 84 Fla., 592, 94 So., 681, 684, 30 A. L. R., 362, a closely divided opinion, in which it was

held that the State Board of Equalization could not refuse to review a tax assessment because the act under which it was asked to proceed was, in its opinion, unconstitutional. In the course of the leading opinion it was, however, significantly said: "The case of *Board of Public Instruction for Santa Rosa County v. Croom,* 57 Fla., 347, 48 So., 641, is not in conflict with the doctrine herein announced. In that case Mr. Knott's interest was directly affected. He was State Treasurer, and under a heavy bond. If he paid money out of the treasury under the provisions of an unconstitutional act, he or his bondsmen would have had to bear the loss. His right to raise the question of the constitutionality of the act involved did not grow out of the obligation of his oath of office, nor out of his official position, but because he was liable to be injured pecuniarily."

It appears from consideration of the authorities that the ministerial officer rule is subject to the exception that a governmental officer may raise the question of the constitutionality of an act when his personal interests are affected, whether adversely or otherwise, and that he is protected from liability by it only when he acts in good faith and with due care. Union County has suffered a substantial loss, which this action was brought to recoup, as the result of the disbursement of its funds by appellant, its treasurer and trustee, under an unconstitutional act. As to the payment to himself we think and hold that he and his surety cannot interpose a defense of ignorance, innocence and good faith. There is just no room in logic or conscience for "good faith" as a defense of a trustee, which the treasurer is, paying the county funds to himself under the facts and circumstances of this case.

No precedent has been found in any reported decision, despite extensive research, which indicates that no public treasurer has heretofore taken a similar position in an appellate Court.

There is another sufficient reason to deny such a defense to the treasurer, insofar as the payment to himself is concerned, and that is that there is undoubted liability upon him arising from his implied obligation to return the money which he received under the invalid act of 1943. 42 Am. Jur., 777. This decision does not deal with the liability of the other recipients of the county's funds; indeed, they are not parties to this action.

The trial Court went further than does this decision and held that the admitted facts before him, under the demurrer and under the motions to strike, were, in effect, susceptible of only one reasonable inference and that is that the appellant treasurer was so possessed of knowledge of the transactions embraced in the acts of 1939 and 1943 that he was, as a matter of law, charged with notice of the illegality of the payments which he made to the other officers and that, therefore, he was not entitled to the protection of the ministerial officer rule, that his knowledge and actions belied good faith (and due care) which would constitute a defense as to the payments, even to the other officers. We are constrained to hold otherwise with respect to the latter and that the appellants are entitled to trial of this issue; that is, whether the treasurer made the payments to the others upon reliance, in good faith, upon the invalid act of 1943, and was not willful or negligent of his duty in so doing.

The overruling of appellants' demurrer, now affirmed in the main, required the granting of respondents' motions to strike from the answers the alleged defenses which thereby went out of the case; but there remains the factual issue of "good faith," including due care, which appellants may undertake to establish in order to bring Caldwell within the protection of the ministerial officer rule with respect to the payments to the others than himself.

There is yet for disposition appellants' third question, which has not hereinbefore been discussed. It concerns al-

leged error by the Circuit Judge in his overruling the demurrer on the ground that it appeared from the complaint that there were no general funds in the county treasury to pay the appropriations contained in the Act of 1943. The question is also stated by respondents as their third issue, as follows: "Is an officer, charged by law with the safekeeping and proper disbursement of public funds, liable if he pays out amounts for which there are no funds available or diverts funds from a purpose for which they were originally appropriated, in violation of constitutional and statutory provisions prohibiting such payments?"

This issue was treated in subdivision 5 of the Circuit order and properly said to be a cause of action additional to, and aside from, the hereinbefore discussed ground of unconstitutionality of the Act of 1943, and it is contended by respondents that it, if sustained, would impose liability upon the treasurer and his surety for having illegally disbursed funds already appropriated for other purposes; as stated in the order: "Even though it may be conceded for the purpose of considering this question that the 1943 Act is constitutional, yet, if the allegations of the complaint be true, the defendant treasurer would be liable, as would his surety, for the making of these payments for the reason that there were no funds in his hands applicable to the payment of such amounts, and for the further reason that the payments thereof resulted in diversion of funds from other purposes for which they had been appropriated."

But this proposition was not put in issue by appellants' demurrer (see statement of the grounds of it, *supra*), and should not have been decided by the trial Court. The holding thereabout is, therefore, set aside, without prejudice to the parties to renew their respective positions concerning it in the Circuit Court, and upon remand of the case this issue, if and as made by the complaint and answer, may be

tried, all without any intimation of opinion on the part of this Court with respect to the merits of it.

. The result is that the case is remanded for trial in accord with the views herein expressed; the Circuit order is reversed to the extent just discussed and, also paragraph 23 of the answer of the defendant Caldwell is reinstated for trial of the issues of good faith and due care insofar only as the payments to the officers other than himself are concerned; in all other respects the order under appeal is affirmed.

Modified and remanded.

MR. ASSOCIATE JUSTICE FISHBURNE concurs.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER concur in part.

MR. ASSOCIATE JUSTICE OXNER (dissenting in part):

I dissent from that portion of the opinion of Mr. Justice Stukes which holds that under the pleadings Caldwell is liable for the money paid to himself under the Act of 1943, even though he may have acted in good faith in doing so. I am in accord with the other conclusions reached in his opinion.

Conceding, without deciding, that Caldwell's position was such that he could have questioned the constitutionality of the 1943 Act, it does not necessarily follow from the fact that he did not do so that he is liable for disbursing the funds as directed under an act now adjudged to be unconstitutional. The question still remains whether the circumstances were such that in the exercise of reasonable prudence and diligence he should have questioned the validity of the Act.

Section 2 of the Act "directed" the County Supervisor to draw warrants for the payment of the sums of money appropriated therein and provided that "the same shall be duly paid by the County Treasurer." This Act was passed by the General Assembly and approved by the Governor, branches of the Government coordinate in rank with this Court. The good faith of the General Assembly in passing, and the Governor in approving, this legislation must be assumed. It is not the function of this Court either to approve or condemn legislative policy. *Gasque, Inc., et al. v. Nates et al.,* 191 S. C., 271, 2 S. E. (2d), 36. We are only empowered to determine whether the legislation runs counter to any constitutional inhibition. Every act of the General Assembly is presumed to be constitutional until the contrary is made plainly to appear. Even this Court does not declare an act of the Legislature invalid unless its unconstitutionality appears beyond a reasonable doubt.

Until an act has been judicially declared unconstitutional, the knowledge of its invalidity will not be imputed to a public officer who has relied upon it in good faith. "There are occasions when the presumption that every man knows the law must be enforced for the safety of society itself. An individual on trial for a violation of the criminal law will not be heard to allege, as a defense, that he did not know the act of which he was guilty was criminal," but where an officer acts in good faith and with reasonable diligence and prudence, "knowledge of the invalidity of the law in advance of any authoritative declaration to that effect will not be imputed to those who are acting under its provisions, and receiving the benefits provided by its terms." *United States v. Realty Co.,* 163 U. S., 427, 16 S. Ct., 1120, 1125, 41 L. Ed., 215.

For the foregoing reasons, ordinarily a public officer charged with disbursement of public funds is not liable for paying out public money when directed to

do so by a statute, although it may subsequently be determined by the Courts that the statute is unconstitutional. In an annotation in 118 A. L. R., 787, it is stated that "an extensive search has disclosed no case wherein a public officer has been held liable for paying out public money in reliance upon an unconstitutional statute. The dearth of authority upon the point suggests the existence of a general assumption against such liability." No case has been cited by respondents' counsel in which a public official has been held liable under these circumstances.

However, under the general rule governing the conduct of public officials, I am in full accord with the statement of Mr. Justice Stukes that such an officer is liable for disbursing funds under an unconstitutional act if the circumstances show that he acted fraudulently or in bad faith. The lower Court held that from the facts and circumstances disclosed by the various acts relating to the compensation and fees of the officers of Union County, "it must be held as a matter of law that the treasurer is chargeable with knowledge that the payments were wrongful, and that he had no right to make them." I do not think any such conclusion can be reached from the pleadings and the question as to whether Caldwell acted fraudulently or in bad faith must be determined when the case is tried on the merits. It is suggested by respondents' counsel that the 1943 Act on its face is so palpably unconstitutional that any reasonable person must have known of its invalidity, but the fact that they devoted seventeen pages of their printed brief and the lower Court fourteen printed pages in its order in undertaking to demonstrate the unconstitutionality of this Act would seem to indicate that the question is at least admitting of argument. The complaint alleges that Caldwell "intentionally", "willfully", and "knowingly" disbursed these funds in violation of his duties as treasurer. These allegations are denied in the answers of appellants. The issue thus

made should be determined on trial of the case without any intimation of opinion from this Court as to Caldwell's conduct.

While holding that a public officer is not liable for disbursing public funds when in the exercise of ordinary prudence he does so in good faith in reliance on an unconstitutional statute, Mr. Justice Stukes concludes that this rule does not apply where such officer pays out public money to himself. An exception to the general rule is made in such a case. He draws a distinction between payment to the officer himself and payment to the others. I am unable to see any logical basis for this distinction. If the funds are lawfully disbursed when paid to others, there is no basis for concluding that the same act becomes unlawful when such an officer pays out money to himself.

It is suggested that when an officer pays money to himself under an unconstitutional statute, he becomes liable upon an implied obligation to return the money which he has received. This theory of liability presupposes the lawful payment of the funds and the wrongful act consists in failing to make restitution when the act is declared unconstitutional. There would be no breach of duty on the part of the treasurer under these circumstances in paying out the funds. Under the allegations of the complaint, the liability of the treasurer and his surety is predicated solely upon *a breach of duty in the disbursement of the funds* and even under a liberal construction of the pleadings, I do not think recovery could be had under these allegations on the theory of an implied obligation to return the money which the treasurer has received. When this action was commenced there had been no adjudication of the invalidity of the act. It will be time enough to consider the liability of the treasurer to return this money when that question arises in an appropriate action brought on that theory. The defense of the surety may

or may not be the same in such an action. All of these matters, I think, should be left open for future determination.

I would remand the case for trial on the issue of good faith and due care by the treasurer in disbursing all funds, including the money paid to himself.

Mr. Chief Justice Baker and Mr. Associate Justice Taylor concur.